**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| IN RE: | ) | MDL Docket No. 1953 |
| | ) | |
| HEPARIN PRODUCTS | ) | CHIEF JUDGE JAMES G. CARR |
| LIABILITY LITIGATION | ) | CASE NO. 1:08-hc-60000 |
| | ) | |
| | ) | ALL CASES |

**PLAINTIFFS' EXECUTIVE COMMITTEE'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION REQUESTING AN ORDER SETTING GUIDELINES FOR THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE**

**I.   INTRODUCTION**

Baxter's reply brief seeks to avoid any meaningful analysis of the practical setting, underlying rationale, and overall reasonableness of PEC's proposal for applying guidelines for determination and application of the attorney client privilege. Instead, Baxter attempts to distract the Court's attention from the PEC's straightforward approach to attorney-client privilege by proposing a complicated choice of law state-by-state analysis of attorney-client privilege.

Baxter's argument that a diversity based Multi-District Litigation ("MDL") must apply the choice of law rules from the state in which the transferor court sits to resolve claims of attorney client privilege has consistently been rejected. (Baxter's brief, at p. 2-3). The MDL courts that have considered this approach rejected it because it requires a separate analysis for each state where a case has been transferred to the MDL.

In this MDL, Baxter's approach, if adopted, would require the Court and the parties to engage in at least thirty different choice of law analysis and in turn potentially thirty different applications of attorney client privilege, which could require thirty different privilege logs and different documents produced for different states.[1]  This burden is why MDL's courts have consistently rejected the Baxter approach. For example, the *Baycol* court recognized that the defendant's approach defeated the purpose of  28 U.S.C. §1407 (a) and found  "this Court similarly finds that the interest of fairness, judicial economy and the MDL are best served by applying consistent law of privilege to discovery in the pretrial proceedings."  *Id.* at 2.  *See also In re Exterior Siding & Aluminum Coil Antitrust Litigations*, 538 F. Supp. 45, 47 (D. Minn. 1982), vacated on other grounds, 696 F. 2.2d 613 (8TH Cir. 1982) (other citations omitted).  Other MDL's have rejected Baxter's argument as well.  *In re human Tissue Products Liability Litigation*, 255 F.R.D. 151, 156-157 (2008).   *E.g., In re Exterior Siding & Aluminum Coil Antitrust Litigations*, 538 F. Supp. 45, 47 (D. Minn. 1982), vacated on other grounds, 696 F. 2.2d 613 (8TH Cir. 1982) (other citations omitted); *In re Baycol Products Litigation*, 2003 WL 22023499 and *In re human Tissue Products Liability Litigation*, 255 F.R.D. 151, 156-157 (2008).

Courts, instead, have either applied a single state's law or established guidelines after thoroughly analyzing the different states' laws of attorney client

---

[1] Courts have recognized that the majority of the jurisdictions have similar attorney client privilege laws, but that there are differences between most states' law of attorney client privilege. *See In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 795 (E.D. La. 2007)("five elements are common to all definitions of attorney-client privilege. . .") ; In *re Ford Motor Co*, 110 F.3d 954, 110 F.3d 954, 965 & n.9 (3d Cir. 197(; In re Teleglobe  Communs. Corp., 493 F. 3d 345, 359-360 (3rd Cir. 2007 (citing RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 68 (2000)).

privilege.[2] No decision, besides the *Vioxx* decision, has ever so thoroughly analyzed the law of privilege across the various states and adopted a process for the simple and easy application of a universal system of applying the attorney-client privilege in a diversity-based MDL.

Baxter's proposed approach to the attorney-client privilege has consistently been rejected because it is too burdensome, costly and creates inconsistent rulings, all of which are contrary to the policies for the creation of an MDL and the policies as outlined in 28 U.S.C. § 1407(a), which in relevant part states that transfer is appropriate when, upon the "determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.'"

Baxter does not address this burden or case law and it ignores the PEC's proposal to work within well established principles to establish a simple, cost effective way for application of the attorney-client privilege in this MDL or any other complex Multi-District Litigation.

### II.  BAXTER'S RESPONSE AVOIDS ADDRESSING THE PEC'S PROPOSAL AND FAILS TO CHALLENGE THE PROPOSED GUIDELINES

Whether *Vioxx* is controlling based on a choice of law analysis is not the point. The point, instead, is the thorough, detailed analysis contained in that

---

[2] Baxter's brief, at footnote 1, mentions that the PEC and Baxter engaged in substantial discussions about adopting the law of Ohio or Illinois for use in this MDL. Baxter, however, does not mention that the PEC consistently said that Baxter was applying the laws from two different states with two different standards. Baxter also does not mention that these discussions were premised on both parties working in good faith to resolve the privilege dispute without involving the Court. However, as the parties continued to discuss the matter, it became to clear to the PEC that the approach was so complex, and considered so many different factors, that it was unmanageable. At that point, the PEC asked Baxter to consider adopting guidelines from the *Vioxx* Court or the *Avandia* court or establishing essentially a set of guidelines based on *Vioxx* and *Avandia*. Baxter rejected that concept and the PEC filed this motion.

opinion, and its particular relevance to MDLs, like this one, that involve vast numbers of documents, occur in the modern era of electronic discovery, and involve attorney-client privilege laws from multiple jurisdictions. Indeed, Judge Fallon's opinion conveys the hope that the time and effort that went into its creation would benefit cases beyond *Vioxx*, by providing useful guidance on privilege matters that are certain to arise in future litigation, regardless of its location. *See id.* at 790, 815.

Tellingly, Baxter does not dispute the reasonableness of any particular standard outlined in *Vioxx*. It does not claim that any particular holding of *Vioxx* was in error. It simply argues that *Vioxx* should not apply based on Baxter's choice of law analysis or because *Vioxx* was rendered in "an entirely different context." (Baxter's brief, at p. 5). Neither of these assertions, however, addresses the pertinence, logic and public policy that are advanced by V*ioxx*'s actual holdings nor the almost identical type of analysis recommended by the special master in *In re Avandia Mktg., Sales Practices and Products Liab. Litig.,* MDL No. 1871, 07-md-01871-CMR (E.D. Pa. June 1, 2009) (attached to PEC's Moving Brief at Exhibit 4).

*Vioxx,* moreover, did *not* arise in "an entirely different context." It, like this case, was a product liability action involving a pharmaceutical product. It, like this case, involved the consolidation and coordination of many different cases from different states in an MDL. *Vioxx,* like this case, also involved thousands of documents in the context of modern electronic discovery, including large numbers of emails.

Baxter, in its opposition, seeks to avoid two of the main justifications for any MDL. First, Baxter avoids responding in a meaningful way to the PEC's proposal to simplify the attorney-client privilege process, which will reduce challenges to Baxter's claim of privilege by the PEC and expedite the process of resolving any issue regarding attorney-client privilege. The PEC's approach is essentially identical to the approach adopted in the Avandia and Vioxx litigation. Instead Baxter proposes a complex, difficult approach for the application of the attorney-client privilege, which will result in a waste of judicial resources, and the lawyers, and their client's time and money.

Second, Baxter attempts to transfer the focus of the argument away from the attorney-client privilege, and in the process, avoids addressing the substantive issues addressed by the PEC's motion. By focusing its response on a complex, choice of law, state-by-state analysis of attorney-client privilege, Baxter ignores the primary purpose for the creation of an MDL.

While Baxter correctly asserts that *Vioxx* differs because the opinion was written after a multi-year discovery dispute over the defendant's privilege claims, (*See id.*), *that* aspect of *Vioxx* is precisely the impetus for the PEC's motion. The PEC seeks to avoid finding itself in a similar place as the *Vioxx* plaintiffs months or years from now by taking advantage of *Vioxx*'s teachings. It was for that purpose, as noted above, that the opinion was written.

### III.   CONCLUSION

An analysis of *Vioxx* demonstrates that it identifies principles of universal applicability. Just because *Vioxx* arose elsewhere, involved a different

procedural stage, or concerned a different product does not mean that it should not be valued for the persuasive guidance that it provides on matters that are not unique to that particular case or jurisdiction.

Baxter's argument that it has provided, and will continue to supplement, a privilege log similarly misses the point of the PEC's position. The ability to refer, *ex ante,* to guidelines like those the PEC proposes will result in numerous efficiencies for everyone involved. It will confirm for Baxter the ground rules for its claims of privilege, enabling it to more easily and accurately make privilege determinations. That, in turn, will reduce the number of erroneous privilege claims, which will, in turn, reduce the number of privilege disputes that occur between the parties and that may, in the event that the parties cannot reach an agreement, need to be brought in motions before the Court. While the production of a privilege log is of course necessary, it is the accuracy of the claims of privilege for the documents in that log that matters. The guidelines that the PEC proposes can help to ensure the latter.

In addition, and as noted in the PEC's moving brief, it is essential that such guidance be provided now, given that important depositions have already occurred without its benefit, and the pace at which discovery is continuing to proceed. It would be far better to implement guidelines aimed at avoiding future problems than to try to fix those problems after they have already occurred by, for example, requiring follow-up depositions to cover documents that were improperly withheld at the time that witnesses were initially deposed.

Baxter's arguments about documents that it "has not sought to immunize from production" (Baxter's brief, at p.7) does not support the conclusion that *Vioxx* is irrelevant or that guidelines are not warranted. If Baxter thinks it is appropriate to produce categories of documents that the *Vioxx* defendant withheld, that simply means there will be no dispute over those documents. *Vioxx* and its guidelines should not matter to Baxter's determination.

For these reasons, and those in the PEC's earlier brief, the PEC's motion should be granted, and the guidelines set out in the PEC's moving brief and proposed order should be adopted and held applicable to this case.

Respectfully submitted,

/s/ David W. Zoll
David W. Zoll (0008548)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Avenue, Suite 200
Toledo, Ohio 43617
Telephone: 419-841-9623
Facsimile: 419-841-9719
Email: david@toledolaw.com

*Plaintiffs' Liaison Counsel*

John C. Evans
Specter Specter Evans & Manogue
Suite 2600, 436 Seventh Avenue
Pittsburgh , Pennsylvania 15219
Telephone: 412-642-2300
Facsimile: 412-642-2309
Email: jce@ssem.com

Daniel E. Becnel , Jr.
106 West Seventh Street
P.O. Drawer H

Reserve , Louisiana 70084
Telephone: 985-536-1186
Facsimile: 985-536-6445
Email: dbecnel@becnellaw.com

Daniel N. Gallucci
RODANAST, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601
Telephone: 717-892-3000
Facsimile: 717-892-1200
Email: dgallucci@rodanast.com

Janet G. Abaray
Burg Simpson Eldredge Hersh
Jardine - Cincinnati
Suite 2090, 312 Walnut Street
Cincinnati, Ohio 45202
Telephone: 513-852-5600
Facsimile: 513-852-5611
Email: jabaray@burgsimpson.com

Donald J. Nolan
Nolan Law Group
30th Floor, 20 North Clark Street
Chicago, Illinois 60602
Telephone: 312-630-4000
Facsimile: 312-360-4011
Email: djn@nolan-law.com

*Plaintiffs' Executive Committee*

<u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on this 31st day of July, 2009, a copy of the foregoing was electronically filed.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and parties may access this filing through that system.

           /s/ David W. Zoll
           David W. Zoll (0008548)
           ZOLL, KRANZ & BORGESS, LLC

           *Plaintiffs' Liaison Counsel*