IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

In re Heparin Products Liability Litigation,                    MDL 1953

This discovery dispute arises out of litigation related to the manufacture and sale of contaminated heparin in 2007.

Pending is plaintiffs' motion to compel defendants Baxter International, Inc. and Baxter Healthcare Corp. (Baxter) to produce documents pursuant to plaintiffs' Third Set of Requests for Production (RFP).[1] [Doc. 317]. Plaintiffs also request sanctions against Baxter for all expenses related to the filing of the motion to compel.

For the reasons discussed below, plaintiffs' motion is granted in part and denied in part.

**Background**

Plaintiffs' Third RFP seeks information related to Baxter's capitalization, profit or gain obtained through sale of contaminated heparin, Baxter's present and future financial condition, and the effect on its condition of any award at trial. Plaintiffs also seek documents relating to Baxter's activities promoting the use or safety of heparin, documents relating to Baxter's contacts with

---

[1] These are actually plaintiffs' second set of requests for production. *See* [Doc. 317-2, at 1 n.1]. I will, though, use plaintiffs' designation when discussing them.

scientists, physicians and healthcare facilities, and any studies, tests or documents concerning the relationship between heparin and injuries.

In response to the RFP, Baxter objected to every request with the same boilerplate language:

> Defendants object to Request No. ** to the extent it is duplicative of requests previously issued by Plaintiffs' in the MDL proceedings and the Illinois State Court Coordinated Proceedings. Defendants further object to Request No. **, including all subparts, because it is overly broad, unduly burdensome, vague and ambiguous, seeks documents not relevant to the claims and defenses at issue in this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

Baxter also objected to three of the requests "to the extent it calls for documents protected by any applicable privilege listed in General Objection I(C) above."

Baxter otherwise did not respond to the Third RFP.

Plaintiffs sent Baxter a meet and confer letter demanding production and asking for the specific bases for Baxter's objections. Baxter responded that plaintiffs must identify requests they believed were not duplicative of prior requests. Baxter repeated its assertions of privilege and burden.

Responding to the present motion to compel, Baxter asserts that it has "already produced a voluminous amount of documents that relate precisely to these topics, including documents on the sale and marginal profit of heparin." [Doc. 352, at 2]. Baxter characterizes plaintiffs as "declin[ing] to withdraw duplicative requests or even to identify requests that they consider to be non-duplicative." [Doc. 352, at 2].

Baxter also argues that plaintiffs are not entitled to discovery on its general financial condition. Baxter relies on *Clark v. Chrysler Corp.*, 436 F.3d 594, 604 (6th Cir. 2006), for the proposition that there must be "some relation" between the financial information and the harm alleged by a plaintiff for there to be any relevance to the financial information.

Plaintiffs counter that it is well-established that, once plaintiffs state a punitive damage claim, a defendant's financial condition is relevant, and that discovery related to that issue is appropriate. They also assert that their requests are relevant to other key issues—namely, over-promotion, adequacy of warnings, deceit by concealment and negligent misrepresentation.

Responding to Baxter's complaint about alleged duplicative production, plaintiffs point to Fed. R. Civ. P. 26(b)(2), which requires the responding party to identify, by category or type, the sources containing potentially responsive information that it is neither searching for nor producing. Plaintiffs note that Baxter has made no showing that the information is not reasonably accessible because of undue burden or cost. Plaintiffs suggest that the "duplicative" objection is a "transparent effort to avoid production of *all* responsive, non-privileged documents by pointing out that *some* may have previously been produced in this MDL and the state coordinated proceeding." [Doc. 388, at 13].            In its surreply, Baxter again asserted that plaintiffs' RFP was overly broad and unduly burdensome, and irrelevant where not duplicative. Baxter alleged that plaintiffs had failed to meaningfully meet and confer by failing to respond to Baxter's invitation to identify requests they believed were not duplicative or irrelevant.

Baxter repeated its contention about the lack of relevance of information about its financial condition. It also pointed out that even where discovery of a defendant's financial condition is allowed, that discovery is not open-ended. Baxter denies that Fed. R. Civ. P. 26(b)(2) requires it to identify previously produced documents.

3

**Standard of Review**

A party may file a motion to compel discovery under Rule 37 of the Federal Rules of Civil Procedure where another party fails to respond to a discovery request or where the party's response is evasive or incomplete. Fed. R. Civ. P. 37(a)(2)-(3).

"A general objection that interrogatories are onerous and burdensome and require the party to make research and compile data raises no issue. The objection must make a *specific showing* of reasons why the interrogatory should not be answered." *Trabon Eng'g Corp. v. Eaton Mfg. Co.*, 37 F.R.D. 51, 59 (N.D. Ohio 1964) (citing 4 Moore's Federal Practice, 2nd ed., p. 2316) (emphasis in original). "[T]he mere fact [that] discovery is burdensome to them is not a sufficient objection to such discovery, providing the information sought is relevant or may lead to the discovery of admissible evidence." *Alexander v. Parsons*,  75 F.R.D. 536, 539 (W.D. Mich. 1977).

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party  .  .  .  ." Relevance is broadly construed for discovery purposes and is not limited to the precise issues set out in the pleadings or to the merits of the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action. *Id.*

The Sixth Circuit has held that "[a]lthough a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978)).

5

A trial court has broad discretion to determine the proper scope of discovery. *Id.*; *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir.1998); *Scales v. J.C. Bradford and Co.*, 925 F.2d 901, 906 (6th Cir. 1991) ("[T]he trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant.").

## Discussion

The parties' briefs do not address the requests specifically but rather focus on three broad contentions, namely, whether: 1) information relating to Baxter's overall financial condition is discoverable; 2) further information relating to plaintiffs' claims of over-production, inadequate warning, fraud and negligent misrepresentation is discoverable; and 3) Baxter's responses and objections to the plaintiffs' Third RFP were proper.

Plaintiffs are correct that they are entitled to discovery on Baxter's general financial condition, although the scope of their request is excessive. Most of plaintiffs' other requests seem relevant as well.

Plaintiffs' Third RFP is not as well drafted as it could have been. In many respects, it is over-reaching and duplicative. But Baxter's response (or, more accurately, failure to respond with anything other repetition of boilerplate) is even less helpful and acceptable. Baxter's often repeated argument that plaintiffs should point out what records they believe are missing is as frustrating for me to read as it doubtless was for plaintiffs. There is no reason the parties cannot resolve these issues if they meet in good faith.[2]

---

[2] Baxter asserts several times that plaintiffs did not engage in a meaningful meet-and-confer process, but I find that Baxter's description of its own efforts undercuts this assertion. Baxter explains that it repeatedly invited plaintiffs to identify the specific relevant information they felt was missing from prior production.

At the very least, counsel should have met, either in person or by phone, and gone through,

6

## A. Financial Condition

### 1. Relevance

Many of plaintiffs' requests seek documents related to Baxter's overall financial condition. Baxter contends that a company's overall financial condition is irrelevant unless the defendant's wealth has a nexus with the underlying claim. Plaintiffs argue that once they have made a claim for punitive damages, as they have in this case, all such discovery is appropriate. Plaintiffs are generally correct—while the scope of their requests is excessive, a party's financial position is relevant to a punitive damages claim, and therefore such discovery is permissible.

The Supreme Court has recognized the relevance of a party's financial position with regard to the assessment of punitive damages. In *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 462 n.28 (1993), the Court observed that it is "well-settled law [that] factors such as [net worth] are typically considered in assessing punitive damages." *See also Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21-22 (1991) (approving consideration of defendant's "financial position" in determining whether punitive damages award is excessive).

---

as *I* have, the requests item-by-item. If Baxter believed it had already provided the information or documents, it should have said so—*and pointed to when, how and where that occurred.* Plaintiffs then could, should, and I assume would have checked and responded appropriately.

With regard to duplicative, or apparently duplicative requests, Baxter should have pointed specifically to the particular requests. The burden then is on plaintiffs to explain how one request differs from another. And production should proceed with regard to non-duplicative requests.

Other courts, when faced with a situation in which defendants failed to indicate how discovery requests were cumulative or duplicative, have required defendants "to identify any previously produced responsive documents by Bates number and [] produce any other non-privileged responsive documents in their care, custody or control . . . . [T]o the extent that no responsive non-privileged documents exist, the court [] require[d] defendants to 'serve supplemental written responses to this request unconditionally representing that no responsive non-privileged documents are in their possession, custody, or control.'" *C.T. v. Liberal Sch. Dist.*, No. 06-2093, 2008 WL 394217, *6 (D. Kan. Feb. 11 2008) (quoting *Manning v. G.M.*, No. 06-2504, 2008 WL 66899, *11 (D. Kan. Dec. 4, 2007)).

The Sixth Circuit has interpreted this precedent as establishing that a defendant's financial position is relevant to the State's interest in retribution and deterrence by awarding punitive damages. *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 649 (6th Cir. 2005). In *Romanski*, the court noted that "it was entirely appropriate for the jury to craft a punitive damages award that was sensitive to the casino's financial position." *Id.*

Several decisions from district courts in the Sixth Circuit are also instructive.

In *Equal Employment Opportunity Commission v. Medical Weight Loss Clinic, Inc.*, No. 07-15394, 2008 WL 4630666 (E.D. Mich. Oct. 17, 2008), the plaintiff filed a motion to compel production of defendant's financial information, including its gross revenue and year-end profits for the years 2004 through 2006, and its corporate tax return for the year 2007. The defendant, like Baxter, claimed the requests were overly broad, unduly burdensome and sought irrelevant information.

The Magistrate Judge observed that both the Supreme Court and the Sixth Circuit have upheld the relevance of a party's financial position with regard to the assessment of punitive damages. *Med. Weight Loss Clinic*, *supra*, 2008 WL 4630666, at *1 (discussing *TXO Prod. Corp.*, *supra*, 509 U.S. at 462 n.28; *Pac. Mut. Life Ins. Co.*, *supra*, 499 U.S. at 21-22; and *Romanski*, *supra*, 428 F.3d at 649).

Defendant Medical Weight Loss Clinic, like Baxter, relied on *Clark v. Chrysler Corp.*, 436 F.3d 594 (6th Cir. 2006), and *Childrey v. Spectrum Health Worth Home Care Inc.*, No. 05-446, 2007 WL 1701836 (W.D. Mich. Jun. 11, 2007), to argue that discovery should not be allowed on its

financial position because its wealth bears no relation to the harm sustained by the charging party. *Med. Weight Loss Clinic*, *supra*, 2008 WL 4630666, at *2.[3]

The Magistrate Judge held that *Clark* cannot be properly construed to bar all discovery on a party's financial position. *Clark* addressed only the consideration of a defendant's wealth with regard to the reprehensibility factor of determining whether a punitive damage award is excessive. As the Magistrate Judge observed, "The court in *Clark* said nothing about discovery of this information. And the court did not state that a defendant's financial position is irrelevant for all inquiries in determining whether a punitive damage award is excessive." *Id.* at *2.

The Magistrate Judge granted plaintiff's motion to compel. *Id.*

In *Howard v. Wilkes & McHugh, P.A.*, No. 06-2833, 2008 WL 4415162, *6 (W.D. Tenn. Sept. 24, 2008), the Magistrate Judge compelled discovery relating to the defendant's net worth,

---

[3] Baxter argues in its surreply that plaintiffs "have failed to distinguish any of the relevant Sixth Circuit law cited in Defendants' Response that requires a connection between the financial information sought and the harm alleged for purposes of discovery." [Doc. 428, at 5]. Baxter cites *Clark*, *supra*, 436 F.3d at 604, *Childrey*, *supra*, 2007 WL 1701836, at *3, and *Pioneer Res. Corp. v. Nami Res. Co.*, No. 04-465, 2006 WL 1635651, *2 (E.D. Ky. Jun. 8, 2006).

Only *Clark* is "Sixth Circuit law," and I find *Clark* distinguishable for the same reasons noted by the Magistrate Judge in *Medical Weight Loss*, *supra*, 2008 WL 4630666, at *2. As the Magistrate noted, *Clark* cannot be construed to bar all discovery on a party's financial position. Allowing discovery as to Baxter's financial position is in agreement with Supreme Court cases finding it appropriate to consider a party's financial position in determining a punitive damages award.

Moreover, because the plaintiffs assert that considerations of profit played a role in the production of contaminated heparin, Baxter's financial status relates to the alleged harm. *Cf. Childrey*, *supra*, 2007 WL 1701836, at *3; *Pioneer*, *supra*, 2006 WL 1635651, at *2.

I note that discovery decisions focusing on the wealth-harm nexus are hardly the rule, even among district courts in the Sixth Circuit. *Compare Watley v. Russell A. Farrow, Inc.*, No. 10-10024, 2010 WL 3611529 (E.D. Mich. Sept. 15, 2010); *Medical Weight Loss*, *supra*, 2008 WL 4630666; *Howard v. Wilkes & McHugh, P.A.*, No. 06-2833, 2008 WL 4415162 (W.D. Tenn. Sept. 24, 2008); *and Westbrook v. Charlie Sciara & Son Produce Co., Inc.*, No. 07-2657, 2008 WL 839745 (W.D. Tenn. Mar. 27, 2008) *with Childrey*, *supra*, 2007 WL 1701836 *and Pioneer*, *supra*, 2006 WL 1635651.

holding that "evidence of a defendant's net worth and financial condition is relevant for discovery purposes when a plaintiff seeks punitive damages, as plaintiffs have done." The Magistrate Judge noted that "the majority of courts have held that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial and without making a *prima facie* showing that he is entitled to recover such damages." *Id.* (collecting cases);[4] *see also U.S. v. Matusoff Rental Co.*, 204 F.R.D. 396, 399 (S.D. Ohio 2001) ("The overwhelming majority of federal courts to have considered the question have concluded that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial.").

At least one district court outside our Circuit reached the same conclusion in a case involving product liability claims based on personal injuries from medication. The suit in *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474 (N.D. Ind. 2009), arose from the suicide of fourteen-year-old Scott Cunningham, allegedly as a result of his use of the prescription anti-depressant Paxil.

Cunningham's family brought claims of negligent misrepresentation, negligence, strict liability and breach of express warranty, and sought punitive damages. The family also brought claims for loss of companionship and income, survival and negligent infliction of emotional distress.

The discovery dispute at issue involved requests for production of documents regarding the revenue and profits from the sale of Paxil and the advertising, promotional and educational materials

---

[4]*E.g.*, *D'Onofrio v. SFX Sports Group, Inc.*, 247 F.R.D. 43, 52-53 (D.D.C. 2008); *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 654 (D. Kan. 2004); *United States v. Matusoff Rental Co.*, 204 F.R.D. 396, 399 (S.D. Ohio 2001); *Audiotext Commc'n Network, Inc. v. U.S. Telecom, Inc.*, No. 94-2395, 1995 WL 625962, *4 (D. Kan. Oct. 5, 1995); *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 152 (D. Kan. 1990).

10

defendant disseminated to the medical community between 2000 and 2004. Agreeing to limit the scope of their requests to sales in Indiana, plaintiffs sought:

- the revenue and profits from the sale of Paxil in Indiana and the United States;

- the advertising, promotion and education budget and spending on Paxil programs for pediatric use in Indiana and the United States;

- documents pertaining to all Paxil pediatric prescriptions written in Indiana;

- the complete files of every sales representative who made a sales call on Cunningham's physician; promotional videotapes or visual aids for Paxil that contain references to children or adolescents; and

- any education campaign materials disseminated to the medical community that discussed the correlation of Paxil and suicide.

*Id.* at 477.

Defendant produced no documents in response and objected to all requests on the grounds that discovery was overly broad, unduly burdensome, irrelevant, inadmissible and protected by attorney-client or work product privilege. *Id.*

The court found that the plaintiffs' complaint "alleged facts sufficient to make a claim for punitive damages, and the financial condition of Smithkline is necessary to develop a claim for punitive damages at trial." *Id.* "Revenue and profits from the sale of Paxil in Indiana," the court stated, "may be relevant to a jury determination of punitive damages if the jury finds that Smithkline knew of an increased risk of suicide and failed to warn physicians or the public about these risks." *Id.* at 478.

Plaintiffs likewise have brought claims for punitive damages and have made allegations of inadequate warning, fraud, intent and recklessness. I agree with the court in *Cunningham* that the information plaintiffs seek is relevant.

11

## 2. Scope

Although relevant, plaintiffs' requests for financial information are overly broad. Most courts addressing the proper scope of financial discovery have limited such discovery to the period providing a picture of the defendant's current financial condition and net worth, usually the most recent year or two.

In *Westbrook v. Charlie Sciara & Son Produce*, *supra*, 2008 WL 839745 at *2–3, the plaintiff filed a motion to compel, seeking financial information relating to defendant's net worth. Specifically, plaintiff requested defendant's federal tax returns from 2005 to 2008 and monthly statements for all checking, savings, and investment accounts held over the same period. Plaintiff also requested annual financial reports, profit and loss statements, and balance sheets from 2005 to 2008. The defendant objected on relevance grounds.

The court allowed discovery of information relating to defendant's financial condition, financial affairs and net worth, but determined that "the scope of discovery should be limited to the defendant's *current* financial condition and net worth." *Id.* at *3; *see also Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 950282, *14 (D. Kan. Mar. 26, 2007) (limiting discovery on financial information on issue of punitive damages to most recent reports and current financial statement); *Learjet, Inc. v. MPC Prods. Corp.*, No. 05-1074, 2007 WL 2287836, *4 (D. Kan. Aug. 8, 2007) (limiting discovery to most recent year); *S. Cal. Hous. Rights Ctr. v. Krug*, No. 06-1420, 2006 WL 4122148, *2 (C.D. Cal. Sept. 5, 2006) (limiting discovery to two year period); *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005) (same); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 654 (D. Kan. 2004) (same).

For those requests related to Baxter's overall financial condition, production shall cover the most recent two year period. This suffices to enable plaintiffs to develop their claim for punitive damages.

Baxter also asserts that the requested documents go beyond what is necessary to ascertain its financial condition. While Baxter may designate where requested information has already been produced (*i.e.*, SEC form 10-K), financial condition and affairs beyond net worth are relevant to punitive damages. *See Westbrook*, *supra*, 2008 WL 839745, at *3.

I agree with Baxter, however, that many of these requests are duplicative. Accordingly, plaintiffs' motion is denied for Requests 1(A-C) and (E).

I also agree with Baxter that three of these requests are overly broad: Request 3(C) ("All financial reports reflecting YOUR current net worth"); Request 3(E) ("All DOCUMENTS concerning YOUR current or prospective financial condition or market performance, including revenue or earnings projections/results, product market analysis, new product development, and product sales for the period from January 1, 2004 to the present"); and Request 3(F) ("All DOCUMENTS concerning any report or analysis of YOUR financial condition or business prospects prepared by you or any third party, including any analysis prepared by financial or industry analysts, for the years 2000-present").

Requests seeking "all financial reports" or "all documents concerning financial condition or market performance" are overly broad. *Watley*, *supra*, 2010 WL 3611529 at *2; *Pioneer*, *supra*, 2006 WL 163561 at *2 (finding request for all documentation evidencing "overall financial condition" overly broad). In *Watley*, the plaintiff requested "all financial records including but not limited to state and federal income taxes from January 2005 to the present, balance sheets, income statements

13

and all schedules attached thereto." *Id.* at *1. After concluding that only "the current year and a previous year's financial information may be relevant," the court found that a request for "'all financial records' is overly broad." *Id.* at *2. The judge ordered the defendant to produce "state and federal income tax returns (as they became available), balance sheets, income statements, and all attached schedules." *Id.*

These limitations make sense. Accordingly, Baxter shall produce state and federal income tax returns (as they became available), balance sheets, income statements, and all attached schedules from 2010 to the present in accordance with Request 3(C) (to extent it has not already done so). As to Request (3)(E), Baxter shall produce, for the current and immediately prior year, revenue or earnings projections/results. Plaintiffs have not shown the relevance of the rest of the information sought. Request 3(F) is denied *in toto*: no part of that information is not duplicative of the other requests.

### B. Over-Promotion, Adequacy of Warnings and Fraud

Baxter asserts that I should deny plaintiffs' motion to compel as to requests relating to over-promotion, adequacy of warnings and fraud. Baxter argues that over-promotion is a "complete red herring" in the case, that the scope of such discovery is limited, and that it has "already produced the information that is relevant." [Doc. 428, at 6].

As to over-promotion, Baxter claims that discovery is irrelevant because of Baxter's affirmation that its sales activities "were neither focused on these products' therapeutic indications nor were they targeted to physicians or clinicians." [Doc. 428, at 6 n.2]. I disagree. Liability in this case depends less on what doctors were prescribing and more on what heparin hospitals were

stocking and how. The information plaintiffs seek appears relevant to their claims, and Baxter's affirmation does not lessen its relevance.

Baxter alleges that the cases cited by plaintiffs in their reply brief "confirm a limited scope of potential relevance, specific to the actual product at issue." [Doc. 428, at 7]. Where plaintiffs' requests appear relevant to claims of over-promotion, failure to warn, fraud and negligent misrepresentation, the requests *are* heparin-specific. Plaintiffs' requests regarding heparin seek information covering the time-span from 2004 to the present, an appropriate scope for such discovery.

Finally, Baxter's claim that "plaintiffs have all of the relevant information to which they are entitled" [Doc. 428, at 8] strikes me as evasive. It does not matter that Baxter "has already produced scores of documents related to the sales and marginal profits from heparin products." It is impossible for either the court or the plaintiffs to determine which responses Baxter claims to have fully responded to, and which responses they are simply objecting to. I address this claim more fully below.

## C. Baxter's Response to the Third RFP Was Insufficient

Plaintiffs argue that Baxter's boilerplate objections were improper and that it has failed to carry the burden of justifying its requests. I tend to agree with plaintiffs, but I note that plaintiffs are not themselves entirely blameless.

The First RFP and Baxter's responses demonstrate the professionalism and cooperation of which counsel and the parties in this case are capable, but which they, for whatever reason, chose uncharacteristically not to display in the course of the current discovery dispute. Had plaintiffs more carefully drafted their Third RFP, many of the issues I have had to address and adjudicate may not

have arisen. Even so, Baxter's mechanical repetition of the same objections request-by-request was not proper.

Plaintiffs additionally allege that Baxter has not shown the requests to be unduly burdensome, and I agree. A responding party "must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Kafele v. Javitch, Block, Eisen & Rathbone*, No. 03-638, 2005 WL 5095186, *2 n.8 (S.D. Ohio April 20, 2005) (quoting *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 565 (D. Kan. 1997)); *see* Fed. R. Civ. P. 37(a)(4). "The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection." *Id.* As Baxter has not substantiated its claim that the requests are unduly burdensome, this objection may be deemed waived. *Id.*; Fed. R. Civ. P. 37(a)(4).

At the very least, where a party claims burdensomeness, it must explain why that is so. It should also propose alternatives, if such might be possible, that could enable some degree of production. Where a party explains the difficulties that compliance would create, the requesting party must be heedful, and not simply knee-jerk dismissive of those explanations.

### D. Sanctions

Sanctions are inappropriate here, although I would note that Baxter is incorrect that the request for sanctions is "unwarranted and inappropriate." Plaintiffs request attorneys' fees and expenses related to the filing of the motion. When granting a motion to compel discovery, a court is *required* to grant costs and attorneys' fees unless one of three exceptions apply. Fed. R. Civ. P. 37(a)(5)(A).

Baxter argues that sanctions are inappropriate here because its position is substantially justified. Fed. R. Civ. P. 37(a)(5)(A)(ii). As my decision thus far makes clear, I disagree.

On the other hand, as noted, more careful drafting at the outset would have been helpful. That it was not allows me to conclude that I can refrain from awarding expenses on the basis that there are "other circumstances [that] make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(iii).

Among the "other circumstances" affecting my decision not to impose sanctions is the fact that, during the prior three year course of this litigation, there has until now been no disruption in the generally professional and, indeed, so far as I can tell, cordial inter-personal relations between all counsel in this case. I am confident that, especially in light of this opinion, all counsel understand what I expect and will continue, as they have previously, to meet those expectations.

I am loath, in any event, to impose sanctions *this time*.

I hope that what I've said here suffices to avoid a next time.

## Conclusion

In light of the foregoing, it is hereby

ORDERED THAT plaintiffs' motion to compel be, and the same hereby is granted in part and denied in part as provided herein.

So ordered.

s/James G. Carr
United States District Judge

17